W. H. Davis *v.* C. Brewer, Appeal from decision of the Chief Justice.

## SUPREME COURT—IN BANCO.

### JANUARY TERM—1872.

*Allen, Ch. J., Hartwell and Widemann, J. J.*

WILLIAM H. DAVIS *vs.* CHARLES BREWER,—IN EQUITY. ON APPEAL FROM DECISION OF THE CHIEF JUSTICE.

IN a BILL IN EQUITY, persons who conveyed land to the respondents are not required to be joined as parties unless their liability to the respondent results from his liability to the complainant.

A JUDGMENT is not conclusive if the record shows an apparent want of JURISDICTION over the parties, AND FRAUD is alleged.

DECISION ON DEMURRER AND PLEA IN BAR.

Bill in Equity to obtain a lot of land in Honolulu, which the respondent holds under a Royal Patent, and which the complainant claims under the following state of facts set forth in his bill:

May 20th, 1847, a deed of partition was made between Wm. H. Davis, Robert G. Davis and Elizabeth Jones, of certain land which they inherited, which includes the lot claimed in this suit.

June 3d, 1847, the complainant, on leaving the Kingdom, appointed his brother Robert his agent by letters of Attorney, with power to transact all business appertaining to his private estate in the Hawaiian Islands, to lease land, prosecute and defend suits, substantiate land claims, appoint a substitute, compromise claims, but not with express power to sell or mortgage land, borrow money or give notes. This letter of Attorney was recorded, and does not appear to be revoked.

November 6th, 1852, Land Commission Awards numbered

4031 and 4032 were issued to Wm. H. Davis and Robert G. Davis respectively for land included within their shares under said deed of partition.

January 10th, 1855, Robert G. Davis borrowed $3000 of B. F. Angell, giving therefor his own and W. H. Davis' joint and several promissory note, with a power of sale mortgage on the land covered by said award No. 4032. Robert G. Davis signed both note and mortgage with his own name and with Wm. H. Davis' name as his attorney.

February 21st, 1856, Angell assigned the mortgage and note to C. Brewer, 2d, who foreclosed by bill in Equity filed October 25th, 1856, and at a sale thereupon ordered by the Court, took a deed of conveyance from the Marshal, February 4th, 1857.

March 3d, 1857, C. Brewer 2d conveyed the land to C. Brewer, 1st, by quit claim deed.

September 7th, 1857, C. Brewer 1st took out a Royal Patent for the land described in said Award No. 4032, which patent avers that the said award had been issued to him by the Land Commission.

The complainant avers that the proceedings in the decree for the foreclosure, the giving of the mortgage deed and note, and the issuing of the Royal Patent, are all without his knowledge or authority, and that he has in no manner received any benefit or proceeds from the sale, or on the note, and that the patent was "wrongfully procured."

The respondent demurs for non-joinder of Angell and Brewer 2d, and pleads in bar the Royal Patent and decree for foreclosure.

HARTWELL, J. *Parties:* Angell and C. Brewer 2d merely released their interest in the land, giving to their respective grantees all their knowledge of the title. It is not apparent therefore that their liability to this respondent is consequent on his liability to the complainant in case his title fail; on the contrary, it would seem that the doctrine of *caveat*

*emptor* applies to the assignment of the mortgage and conveyance by quit claim deed. As joinder of these parties does not depend upon the importance of their testimony to the respondent, for that is available for them, but on the question of their possible liability to him should the title fail which they undertook to convey, their non-joinder is not regarded as good cause for demurrer, (1).

*Conclusiveness of Patents:* All the presumptions are in favor of a patent. It is the highest evidence of title, and can only be impeached in equity on a clear showing of fraud or mistake in the issuing of it. There is no hardship in requiring a patentee to explain how his patent on its face conflicts with an award by the Land Commission, in the false averment that it is based on a Land Award issued to him which was in fact issued to another person. It is only in a judicial tribunal that rights appearing to be secured under one patent, or Land Award or statute, can be adjusted with conflicting rights appearing to be secured under another patent, award or statute, or under the Constitution. The executive authority may be misled into giving to one man a patent of another's land, and clerical mistakes are always possible, but it cannot revoke its own acts, and must leave to the Courts to decide on their validity and effect. This was so decided by this Court in Bishop *vs.* Namakahaa et al., 2 Haw. Rep., 239, which is a precedent governing this point in the present case. So in Laanui *vs.* Puohu, *Ib.,* 161, where the defendant held a Royal Patent, alleged to have been wrongfully obtained.

This view is sustained by the decisions of the United States Supreme Court on Patents issued by the executive authority, and of the English Courts on Royal Letters Patent, (2).

*Conclusiveness of Judgments:* In the absence of fraud or obvious mistake apparent on the record, judgments *inter partes* are final on parties and privies, if pronounced by a Court having jurisdiction of the cause, the subject matter

and the person sought to be affected thereby, and errors and irregularities in the proceedings on which such judgments are based can usually be reversed only on motions for new trial, bills of exceptions, writs of error or other defined statutory modes. But there is a distinction between a voidable judgment and a void judgment. The judgment of a Court having no jurisdiction is *coram non judice,* and void, and cannot affect a person not brought within the jurisdiction of the Court by actual or substituted notice. It is competent for the Legislature to provide a reasonable mode of substituted notice to defendants who have left the kingdom, and ordinarily, judicial proceedings had after such statutory notice cannot be declared invalid on the ground of insufficient notice.

The complainant avers that he had no knowledge of the proceedings had against him. There is nothing judicially before us concerning the character of the citation, or to show that there was any citation. The statute in force at that time required notice to be given to "some one on the premises involved in the controversy," and by publication "in the *Polynesian* newspaper for such period as the Court may deem to be equitable." But in the case of a fraudulent or wrongful sale by an unauthorized agent, notice to him of proceedings in Court to decree the sale absolute by foreclosure, or notice thereof to the person placed on the premises, placed there by such agent, who was in this case authorized to lease, would not be the kind of substituted notice intended by the statute ; for that would be using the statutes and the Courts as instruments to effectuate an apparent fraud, and to validate an instrument *prima facie* worthless. And the same might be said of a publication if it were not at least likely or possible to reach the absentee, for his rights ought not to be concluded without a possible opportunity for him to be heard, in a transaction which was void in its inception, and so appearing on the showing of the party seeking the aid of the Court to sanction it.

W. H. Davis *v.* C. Brewer, Appeal from decision of the Chief Justice.

In the absence of apparent fraud or mistake in the basis or concoction of the decree perhaps the safer doctrine to hold concerning judgments of Courts of general jurisdiction is, that the recital in the record of facts giving jurisdiction is conclusive, and even that in the silence of the record, the existence of those facts will conclusively be presumed. But whatever be the sound doctrine on this very unsettled point of law, it cannot conclusively be presumed that a party was amenable to the jurisdiction of the Court when not only does the record fail to show or aver that he was brought before the Court by personal or substituted notice, but does show an apparent failure of authority in the basis of the entire proceedings. When an allegation is made that there was a fraud on the absentee whose rights were thus apparently adjudicated, a person may show if he can that the apparent fraud was real, without impeaching the validity or conclusiveness of the judgment within the meaning of the above rule, for, as Lord Coke says, fraud is something which "vitiates the most solemn judicial proceedings, ecclesiastical or temporal." But it must be a clear and apparent case of fraud. See Patch *vs.* Ward, 3 Eng. Ch. App., 206, (1867).

In permitting the complainant to offer his evidence, the doctrine is not impugned that in order to obtain a reversal of the decree for foreclosure, he must affirmatively make out a case of willful fraud, or mistake, in which do not enter his own acts or failure to act in duly ascertaining the conduct of his agent, the condition of his property, or his culpable failure to obtain notice of what a reasonably prudent man should have known, and also that he has received no benefit from his agent's acts, nor impliedly ratified them by silence after they were brought to his notice. These are matters for consideration after the testimony on both sides shall have been presented, (3).

(1.) In Burlingame *vs.* Hobbs, 12 Gray, 362, there was a demurrer for non-joinder of the plaintiff's brother, for whose

benefit the plaintiff had mortgaged certain land, but the
Court overruled the demurrer on the ground that the person
sought to be made a party "has no interest whatever in the
subject matter of the present suit. However it is deter-
mined, he will neither gain nor lose."

In Earle *vs.* Bickford, 6 Allen, 550, the Court say :   " The
general doctrine is that the grantee who takes such a deed
(quit claim,) cannot recover back the consideration money in
case of failure of title." And so in Earle *vs.* De Witt, *Ib.*,
634, (Merrick, J., dissenting,) where there was a mutual mis-
take as to the title.   Kent admits that the law does not seem
to be clearly and precisely settled on this point, where there
is no ingredient of fraud, but regards it as the sounder doc-
trine which remits a party to his express covenants, and
gives him no right to recover the purchase money on a quit
claim deed in such cases.   2 Kent's Comm., 471.   That a
purchaser is bound to inquire into defects in a power of
attorney under which a mortgage is made, and that there is
no implied covenant of title in a quit claim, see also Rawle's
Covenants of Titles, pp. 476, 473, *et passim,* and Washburn's
Real Prop., Title of Implied Covenant ; also Brush *vs.* Ware,
15 Pet., 105.

(2.) In Brush *vs.* Ware, 15 Pet., 105, the defendant held
under United States Land Patent, the Court there, McLean,
J., say :   " The question which should first be considered is
whether the Court can go behind the patent, and examine
the equity in the bill."   The patent in this case was based
on a Land Warrant assigned to the patentee by an unauthor-
ized party, being the executor of the will of the party to
whom the warrant was issued.   The Court held that they
could look into the equity of the title, and that it was "not
an unreasonable duty to impose on the purchaser to examine
both the warrant and the will, and to see what powers it con-
ferred on the executor ; " that the assignment of the warrant
by an executor was enough to put a prudent man on the in-

quiry for defects in title before purchasing. So in Polk's Lessee *vs.* Wendal, 9 Cr., 99, the Court, Marshall, C. J., say, of a Land Patent by the State of North Carolina: "But there are cases in which a grant is *absolutely void*, as where the State has no title to the thing granted." So in Bodley *vs.* Taylor, 5 Cr., 191, and in Miller *vs.* Kerr, 7 Wheeler, 1, the Court held that a legal title in land could not "be made to yield to an equity founded in the mistake of a ministerial officer," in issuing a land warrant. So in Bouldin *vs.* Massie's Heirs, *Ib.*, 147; Hoofnagle *vs.* Anderson, *Ib.*, 212; City of New Orleans *vs.* Armas, 9 Pet., 237.

The People *vs.* Livingston, 8 Bart., 277, *Per Cur.:* "If letters patent are absolutely void on their face, or the issuing of them was without authority, or was prohibited by statute, or the State had no title, the decisions of the Courts very uniformly agree that they may be impeached collaterally."

In Gladstone *vs.* Earl of Sandwich, 4 M. & G. 1020, it is said that the cases in which the King's grant has been held to be avoided by reason of any misdescription or mistake therein, will be found to fall under one of three classes: 1—When the King by grant has professed to give a greater estate than he had himself in the subject matter of the grant, as in the case of Alton Woods, (1 Coke 43). 2—Where the King has already granted the same estate to another, in which case the second grant would work injustice, or at all events great inconvenience. Such was the case of Alcock *vs.* Cook, (5 Bing. 346), or 3. When the King has been deceived in the consideration expressed in the grant, as where the consideration has been untruly stated, or the subject of the grant has been recited to be of less value than it really is, or where as in the case of Mead *vs.* Southwell, (2 Roll. Abr. 189) the King recites a former grant of an office for life and a surrender, and then grants the same office to J. S., whereas in truth the King has not granted the office for life or the office has not been surrendered. Here the

grant would be void because there was no such consideration as was recited.

(3.) In Sibley *vs.* Waffle, 16 N. Y. 190, an Administrator's sale of land was made by order of the Court, but the order was made without any jurisdiction under the statute and was *held* to be void, the Court saying that a judge "could not acquire jurisdiction by *deciding* that he had it."

In Elliott *vs.* Piersol, 1 Peters 350, the Court say that if a Court "act without authority, its judgments and orders are regarded as nullities. They constitute no justification."

Corwithe *vs.* Griffing, 21 Barb. 15: If the defect of jurisdiction is apparent in the record, the judgment may be inquired into by a Court of Equity.

Woodcock *vs.* Bennett, 1 Cow. 735; *Per Cur.:* "But there is a marked distinction· between judgments reversed from error, and executions set aside for irregularity be such as renders the process void. One case is the fault of the party himself, the other is considered the error of the Court.

In Manf. & Merch. Bank *vs.* Boyd, 3 Den. 258, judgment was entered by virtue of a defective power of attorney. *Held*, that the lack of authority was vital and rendered the judgment worthless. So in Bodurtha *vs.* Goodrich, 3 Gray 511, where the Court (Shaw, C. J.) say: "It would be reasoning in a circle and inconclusive to say that the Court had jurisdiction because it was shown by their record that the defendants appeared by attorneys, and that they had authority to make such record binding on him, because they had jurisdiction."

The Mary, 9 Co. 145, per Marshall, C. J.: "The whole world it is said are parties in an Admiralty cause, and therefore the whole world is bound by the decision. The reason on which this dictum stands will determine its extent; but notice of the controversy is necessary·in order to become a party, and it is a principle of natural justice, of universal

obligation, that before the rights of an individual be bound by a judicial sentence, he shall have notice, either actual or implied, of the proceedings against him," and generally. See Crepps *vs.* Durden, 1 Sm. Leading Cases, Hare & Wallace's Notes.

C. C. Harris and F. H. Harris for complainant.
S. H. Phillips and A. F. Judd for respondent.