Wei See and Ching See *v.* Young Sheong and Afong.

## SUPREME COURT—IN BANCO.

### JULY TERM—1873.

*Allen, Ch. J., Hartwell and Widemann, J. J.*

WEI SEE AND CHING SEE *vs.* YOUNG SHEONG, AFONG, (EXECU-
TORS OF THE WILL OF ACHU, DECEASED), AND OTHERS,—IN
EQUITY.

THE Court in Equity has jurisdiction to decree account and distribu-
tion of estates, testate or intestate, and one absent party without
notice may afterwards make his claim against executors, adminis-
trators or distributees.

If erroneous distribution has been made in a Probate Court it is the
duty of the Court in Equity to review the judgment of the Probate
Court, and order new distribution.

The adoption of a child without a declaration of its heirship in the
deed of adoption, does not give it rights of inheritance.

Chinese marriage not polygamous.

The Hawaiian widow of a Chinaman who also had a wife in China is
entitled to dower in his estate in this kingdom.

OPINION OF THE COURT BY ALLEN, C. J.

The complainants allege in their bill that they are natives
of and residents in China, and that one of them, Wei See,
was the mother of Achu, who was domiciled in Honolulu,
but died in China in 1865, and that the other, Ching See,
was the lawful wife of said Achu; that the said Achu had
no issue, and that complainants are the heirs at law of said
Achu.

It is alleged further that on the 12th day of January, 1865,
he made a specific will of a portion of his estate, at Honolulu,
leaving the balance undisposed of, by which he devised to
Kamaka, a native woman, $500 and his dwelling-house
premises, real estate at Waikiki, and all his furniture, to be

62

held by her during her natural life, and after her death to go to her so-called adopted daughter Kalaukapu. Young Sheong and Afong were appointed executors.

The complainants allege that at the time of making said will, Achu was possessed of personal property to the value of about $13,000, and that he gave a letter of instructions to Young Sheong and Afong in relation to the disposition of his property; that the executors should have held the residue of complainants' property in trust for complainants, the heirs at law; and there is an allegation of fraud against the executors.

It is further alleged that the will was admitted to probate November 10th, 1865, by Young Sheong, and that Young Sheong filed a false inventory on the 26th June, 1869, which amounts to $6,621.65 only, and that on the 25th of May, 1869, Young Sheong filed his petition for a settlement of his accounts and the discharge of the executors; that the final hearing was had on the 29th of June, 1869, and that their account exhibited a balance of assets of $7,321.65, which was $4,778.35 less than should have been exhibited, and that on that day the accounts were passed and the executors discharged; that about $1,500 of the claims were illegal, and should not have been paid from the assets of the estate; that Kamaka and Edwin H. Boyd were appointed guardians of said Kalaukapu on the 2d day of July, 1869; that on the same day distribution was made of the remainder of the estate between Kamaka and Kalaukapu, as follows: to Kamaka, one-third, or $1,924.01, and to Kalaukapu, two-thirds, or $3,858.02, which sums were paid; that the residue of the estate by law descended to the heirs at law, and that the said executors held said property in trust for them, and that they are entitled to the same: that the complainants were residents in China, and had no notice of said distribution; that said executors acted fraudulently, and well knew that the complainants were heirs at law of the said Achu, and that they fraudulently concealed these facts from the

Court and permitted an unlawful distribution to be made, and pray that the same be set aside and the respondents be compelled to pay to the complainants the residue of the estate, after paying legacies, just debts and costs.

Afong, in his answer, states that he was in San Francisco during most of the time, and that all the transactions relative to the estate transpired during his absence in China, and that he never took upon himself the executorship of the will, nor received any of the moneys.

It is admitted by the counsel for the parties that Achu's domicile was in Honolulu, and it is an admitted principle that the distribution must be made according to the law of his domicile, and it is equally well settled that a Court of Chancery has jurisdiction to decree an account and distribution of a testate's or intestate's estate, on the application of legatees or next of kin.—1 Mason, Harvey *vs.* Richards, 380 ; 3 John, C. R., 209.

It is a well settled principle in respect to these proceedings in Chancery for the distribution of a common fund, that parties in interest may claim a distribution, and an absent party who had no notice of the proceedings and not guilty of willful laches or inexcusable neglect, will not be concluded by the decree of distribution from the assertion of his rights by bill against the executors or administrators, or in case they have distributed the funds in pursuance of an order of the Court, against the distributees.   There was no laches on the part of the complainants, for they were doubtless misled as to their rights by the conduct of Young Sheong's mode of administering on the estate.   His course was wholly illegal.   His inventory was incorrect, and his concealment of kindred abroad from the knowledge of the Court was wanting in good faith.   His payment of money to the complainants was wholly without authority, but was well calculated to mislead those parties in their rights.—Williams *vs.* Gibbs, 17 Howard, 479 ; Story's E. R., §106 ; Wiswall *vs.* Sampson, 14 How., 52, 67.

It is unnecessary to give the answer of Young Sheong in detail; it is sufficient to say that he joins issue with the complainants and calls for proof, but adds by way of averment that he sent a draft for $2500 in favor of Wei See, the mother of Achu, to Mon Tuc, of which amount, he is informed and believes that only $2,000 were paid, and that said sum was received by Wei See. He avers further that he paid to said Mon Tuc, in China, the sum of $1,000 for the use and benefit of complainants, and he did not include these amounts in his accounts because they were paid by virtue of his letter of instructions from Achu; denies the allegation of any concealment from the Court, or any collusion, but says that the distribution was made by the Court in proof that Kamaka was the lawful wife of Achu, and that Kalaukapu was his adopted daughter, and denies that he concealed from the complainants any facts of the case; denies that he has paid any claims which ought not to have been allowed, and that whether the distribution was made without notice or not, says he looked to the Court to make the proper orders; avers that he was disinterested and obeyed the orders of the Court in the whole matter, and finally denies all combination.

The answer of Kamaka neither admits nor denies the relationship of complainants to Achu, but admits that she heard from Achu at the time of his departure for China in the year 1865, that he had a mother in China, and has been informed and believes that she survived him; that she was not advised that Achu left with the intention of remaining in China, and does not believe it, but was in precarious health when he departed. Kamaka admits the probate of the will, and makes profert of it; that she received the $500 under said will; avers that she was the lawfully married wife of Achu, married to him under the laws of this Kingdom in 1850; that Kalaukapu was the lawfully adopted daughter of the said Achu and defendant, and makes profert of the agreement of adoption; that she received $1,000 in addition to the $500

under the will, being her proportion by reason of her said marriage as heir at law; and further that she remitted to China, for the mother of Achu, the sum of $500 out of the said $1,000, out of regard for her husband and as a token of respect for his mother, not knowing that she had received about $3,000 previously out of said estate, and avers that the respondent and Kalaukapu were entitled to the distribution; answers that she was ignorant of the legality of the proceedings of the Probate Court, but believes them correct, and denies collusion for self and ward; pleads ignorance of the other allegations in the bill, and leaves the complainants to make their proofs.

The amended answer of said Kamaka states that the real estate mentioned in said will of said Achu, is her own property in her own right, and not her husband's; that at the time of the adoption of Kalaukapu it was the intention of the said Achu and herself to adopt her as the heir of both, and that Mr. Justice Robertson informed them that the articles of adoption were sufficient, and that said Kalaukapu was always treated as their own child.

The letters of Young Sheong and Afong show very clearly that they regarded Wei See as the mother of Achu. This is further shown by the acts of Young Sheong in remitting money to Mon Tuc, in China, for her benefit, to the amount of $2,000, and subsequently in remitting $1,000 for the benefit of his wife and mother.

It is unnecessary to give a detail of the evidence in addition, but the Court is satisfied that Wei See was the mother of Achu, and that Ching See was his wife, according to the laws of China.

The agreed testimony of Afong (in the proceedings of May 3d, p. 1,) is, that during his recent residence in China, he visited the plaintiffs in this case, and that the elder woman, Wei See, was reported among the neighbors and family to be Achu's mother, and that they all called Ching See his

(Achu's) wife; and that he visited them as a friend of Achu, having known him in Honolulu, and that of his own personal knowledge he knew nothing further.

The letter of instructions to Chung Fong (Afong,) and Young Sheong, dated 1st February, 1865, but a few days after the specific will and immediately on the eve of Achu's departure for China, shows clearly that his intention was that all his estate not bequeathed by will was to go to his relations in China. After giving directions about collecting his debts and property, he says in that letter : "If I (Hee Chin,) get home to China, I will be happy and thankful to God, and if I perish on my way, then collect my share of the money in the store of Chung Hoon & Co., and then $2,000 to be given to my mother. I now myself bring $2,000 home to be given to my wife and adopted son, Mon Tuc. And for my native wife Kamaka, her share is $500. The balance to be given to my older brother, Hing Chong. The interest of my opium business, if it stands, to be given yearly to Cheon Tai's mother, my sister. I, Hee Chin, give this as a favor. If the opium shop retires from business, the capital amount to be given to Poon-Kai-Chee, the house of my first generation, for expenses. I this day hand this certificate to Young Sheong and Chung Fong."

Mr. J. W. Austin was their attorney in the case, and he testifies as follows : "I do not remember that they (Young Sheong and Afong,) ever informed me about any letter being received by them, dated after the execution of the will."

Young Sheong and Afong undoubtedly received said letter, and partially carried out its instructions in paying money to the complainants, and they acknowledged by their own letters that they believed Wei See the mother, and Ching See the wife, of Achu.

There is no record in the Probate Court that there was such a letter of instructions, or that Achu had a mother and a wife in China. It is clearly shown, therefore, that Young

Sheong took upon himself to distribute the estate according to the letter of instructions instead of filing an inventory of the whole estate, and giving all the information he had to the Court on the subject of the kindred and relationship of persons in China to Achu, and then asking for the distribution. He grossly failed in his duty in both respects, and the course he took was calculated to deceive the mother and wife in China, and Kamaka and the Court as well, and hence it is the duty of the Court to re-open the case, review the judgment of the Probate Court, and order a new distribution.

It is not denied by the counsel for the complainants that the real estate set forth in the will as devised to Kamaka was her property in her own right, and it is admitted that she is entitled to the devise of $500, as therein declared. And he admits further that Kamaka is entitled to a just allowance in all the residue of the property of Achu by virtue of the law of this Kingdom which declares that a woman shall be so entitled, when she shall be deceived into contracting an illegal marriage with a man having another wife living, under the belief that he is an unmarried man. Section 1315.

It is contended by the counsel for the defendants that Kalaukapu has the right of inheritance as an adopted child, but this question was settled adversely in the case of "In re Hannah Maughan," at the January Term, 1871, and the articles of adoption in the case of Hannah Maughan and those of Kalaukapu are the same in terms, and include no declaration of heir-ship, which the Court said was necessary. By the letter of instructions of Achu, it fully appears that he intended that all the residue of his property not included in the will should become the property of his heirs in China, especially his wife and mother and his adopted son, Mon Tuc. It is very evident that Achu did not intend to give to Kamaka and Kalaukapu any more of his property than what was set forth in his will.

In Section 1290, Civil Code, it is declared, that "mar-

riages legal in the country where contracted shall be held legal in the Courts of this Kingdom." It is very evident from the testimony, and from the letter of instructions of Achu himself to Afong and Achuck, that Ching See was his lawful wife according to the laws of China, and Wei See his mother.

It has been contended that polygamy is recognized in China and therefore there can be no legitimate inheritance by a wife. The witness who was present at the marriage describes the ceremonies, and it is said that they are everywhere the same, or similar, and that the Chinese have only one wife, but often have concubines. That the wife inherits. This is in accordance with the most reliable accounts we have of their domestic relations. They have provided for the undoubted succession of the inheritance by disallowing more than one wife. The position of the wife taken by prescribed formalities and that of the women purchased as concubines, without them, are accurately defined, and the degradation of the former or the elevation of the latter so as to interchange their places on the taking of a second woman, are all illegal and void. And had Achu been properly instructed, he would have carried out his intention as expressed in his will and in his letter of instructions to Afong and Young Sheong.

Achu refers to Mon Tuc as his adopted child, but the evidence is not sufficient to give him a right of inheritance. His counsel declares that he claims nothing for Mon Tuc.

It appears that Afong never assumed the duties of executor by positive acts, although his name has been used in connection with the estate, but without evidence of authority, and therefore I am of opinion that he should be discharged from liability, but he is not entitled to costs, as he should have taken interest enough in the business to have signified his declination.

I am of opinion that Young Sheong made a fraudulent inventory in withholding property which belonged to the

estate. He acted in part under the will and in part under the letters of instructions of Achu, and it is evident that the mother and wife of Achu, in China, were misled in relation to their rights of property here.

Kamaka was misled as to her rights, as it was not made known in Court that there were any other claimants to the property than herself and the alleged adopted child here.

The Court declare the distribution as made by the Probate Court as void, and revoke the same, as the inventory was fraudulent, and notice of material facts in regard to the kindred in China, which affected their rights as well as the right of the person he married here, was withheld.

The counsel for the complainants do not contest the validity of the will, but acquiesce in its probate, and the only claim made by them is to recover the residue of the personal property which belonged to the estate of the said Achu, which was received by the executor Young Sheong.

An order is hereby made on Edwin H. Boyd and Kamaka, revoking their guardianship of Kalaukapu so far as the property is concerned, and directing them to pay the money into Court which they have received in that capacity. And an order is hereby made on Young Sheong to pay all the money into Court which belonged to the estate, and of which he has rendered no account to the Court.

The decree of the Court is, that all the property of Achu which came into the hands of the executor, Young Sheong, and which was not disposed of by will, of right belongs in the following proportions to, wit: Kamaka, one-third; Wei See, the mother, one-third; and to Ching See, one-third; and will be so distributed when paid into Court as ordered.

The master will make up the accounts and division according to the foregoing order of distribution.

It is the judgment of the Court that Young Sheong pay the costs of this suit.

63

HARTWELL, J.:   I concur in the view of the Court which affirms the decree of the Chancellor; but in that portion of the decree whereby the Chinese marriage is held to invalidate the subsequent Hawaiian marriage, I assent with great hesitation, from the unsatisfactory relations shown to exist between the sexes in China, which appear to permit concubinage as a lawful accompaniment of their marriages.   I hope that the next Legislature will legislate on the subject of the marriages of Chinese in this country.

C. C. Harris for Appellants.

W. C. Jones for Appellees.