## ELIZA CABRAL SOUZA AND BELINA CABRAL JAGOE *v.* SOCIEDADE DE SAO MARTINHO BENEFICENTE DE HAWAII, AN HAWAIIAN CORPORATION.

### No. 1139.

SUBMISSION UPON AGREED STATEMENT OF FACTS.

ARGUED JANUARY 23, 1919.            DECIDED JANUARY 30, 1919.

COKE, C. J., EDINGS, J., AND CIRCUIT JUDGE DEBOLT IN PLACE OF KEMP, J., ABSENT.

ADOPTION—*adults—statute.*

> The adoption of adults is not authorized by statute in this Territory.

OPINION OF THE COURT BY EDINGS, J.

The agreed case submitted to this court shows *inter alios* that one Manuel Caetano Baptista, now deceased, married the mother of the plaintiffs when they were both infants of tender age; that he was a member of the defendant society in good standing when he died; that on April 25, 1917, a short time before his death, he filed in the circuit court of the first circuit of this Territory his petition praying that the adoption of the plaintiffs be authorized, legalized and declared valid. They were at this time of the ages of forty-two and thirty-six years respectively. The petition was granted and the decree prayed for was duly made by the judge of the circuit court. Soon thereafter the deceased died. By the by-laws of the defendant society when a member in good standing dies a death benefit is payable to certain relatives. Chapter 5 of the by-laws of the defendant society contains the fol-

lowing provision: " * * * the board of directors shall pay" the death benefit to the relatives in the order following: "1. To the widow; 2. To the children, legitimate or legitimated" (Articles 2 and 3).

The plaintiffs as children of the deceased claim the said death benefit. The defendant society's principal claim is that the plaintiffs were not children of the deceased for the reason that the circuit court or judge had no jurisdiction to legalize the adoption by the deceased of the plaintiffs, they being at the time of the decree adults.

While it is true that adoption in its legal sense was unknown to the common law and is a creature of statute in the several states, the majority of which based their statutes upon the civil law, it is beyond question that Hawaii was an absolute monarchy- independent of and uncontrolled by the laws of any country. "He (the King) is the sovereign of all the people and all the chiefs. The kingdom is his. * * * He shall be the Chief Judge of the Supreme Court." Constitution of 1840, Kamehameha III. That adoption in the broadest sense was practiced among the Hawaiians from very remote times is incontrovertible and most probably was derived from the mammalian instinct, although at times it appears to have been resorted to for the purpose of evading some public duty. "If any parent have five, six or more children, whom they support, * * * then those parents shall by no means be required to pay any poll, land or labor tax until their children are old enough to work, which is at fourteen years of age. * * * But it shall not be proper for any man to adopt the child of another for the purpose of avoiding the labor tax. He may, however, adopt the children of his deceased relations and friends, when the children are thus left orphans." Laws of Kamehameha III, 1839, Fundamental Law of Hawaii, p. 17.

In the case of the *Estate of Nakuapa, deceased,* 3 Haw.

342, among the claimants appeared Kaaoaopa, who claimed the estate as an adopted daughter of Nakuapa, alleging that the adoption was made before any law requiring adoption to be made in writing. The court says: "It is unnecessary to give a detail of evidence in relation to the custom and usage which prevailed in relation to adoption, prior to the written law, for it is admitted that it was a very general custom among the people. * * * Our statute of inheritance declares that property shall be divided equally between the intestate's children. We regard an adopted child as included in this general term." In the case of the *Estate of Kamehameha IV*, 2 Haw. 715, Robertson, J., says: "He (Prince Alexander Liholiho) was entitled as the adopted son of Kamehameha III to inherit the remainder of the estate" subject to the dower rights of Queen Emma.

While it has been held in several of the states that a statute providing for the adoption of children without any limitation expressed by such words as "minors, infants," etc., or any words which would logically indicate that the intention of the legislature was to confine the adoption to minors, such statute would be construed to authorize the adoption of adults, we are unable to discover any decision which holds that the word "child," as used in these statutes, would be construed to include an adult where the language of the statute indicates that the intention of the law-making power was to confine it to minors. An examination of the laws develops the fact, in our opinion, that there never was a law in force in Hawaii providing for adoption which did not, at least by inference, confine the word "child" to minors. In chapter XXI, Laws of Kamehameha III, dated April 24, 1841, we find the following: "It is a great misfortune for children not to be well taken care of. * * * It is well for the law also to aid the parents in taking care of their children. * * *

If parents wish to commit their child to the care of another, it is well for them to go before an officer, and make their agreement in writing and he being a witness to the correctness of the transaction and signing his name as such, the writing shall be legal. If there is no writing or no officer sign his name, the child cannot be transferred." Fundamental Law of Hawaii, pp. 72, 73. The next enactments on the subject are those of 1846 as follows: "It shall be competent to parents to consent in writing, and in the presence of a judge, to the adoption of their children by any suitable third party; but in that case the terms of the adoption must be definitively stipulated in the agreement, and must not be a beneficial consideration to the parents, but to the child, satisfactory to the judicial officer acknowledging the adoption. All such acts of adoption shall be recorded by a notary public as in and by the fifth part of this act provided." Stat. of Hawaii 1846, Ch. 1, Pt. IV, Sec. 3. "It shall be incumbent upon all adopters of children, pursuant to the Fourth Part of this Act, within thirty days after such adoption, to transmit the written act and terms of such adoption to the said principal notary public at Honolulu, to be by him enregistered at the expense of the adopter * * * in default of which such act of adoption shall be void and of no effect." Stat. of Hawaii 1846, Ch. 2, Art. 3, Pt. V, quoted in *Abenela* v. *Kailikole*, 2 Haw. 660 (1863), also referred to in *Wei See* v *Young Sheong*, 3 Haw. 489 (1873), and *Black* v. *Castle*, 7 Haw. 273 (1888).

The language of these laws clearly and logically points to the conclusion that a minor child was exclusively intended. And as these laws were the only written laws authorizing adoption in Hawaii up to the time of the enactment of Act 47, Session Laws of 1915, the adoption of an adult is not authorized by statute in this Territory. These laws of Kamehameha III were never repealed up to 1915,

but were especially preserved together with other laws by an article of the constitution of 1852 of Kamehameha III. "All laws now in force in this Kingdom shall continue and remain in full effect until altered or repealed by the legislature," a similar provision being inserted in every constitution of Hawaii.

The next statute upon the subject is section 853 Civil Code of 1859 providing that "The said Justices (of the supreme court) shall severally have power at chambers to * * * legalize the adoption of children," which is followed by section 853 Compiled Laws of 1884 as follows: "The said Justices shall severally have power at chambers to * * * legalize the adoption of children," while section 883 Compiled Laws of 1884 provides that "The several circuit judges throughout the Kingdom shall be, and they are hereby empowered, to certify and legalize the adoption of children in the same manner with the Justices of the Supreme Court." The next legislation upon this subject is contained in section 1853 Civil Laws of 1897 providing that "All * * * agreements of adoption, shall, in order to their validity, be recorded in the office of the Registrar of Conveyances, in default of which no such instrument shall be binding to the detriment of third parties, or conclusive upon their rights and interests." The next reference to adoption is in section 1648 R. L. 1905, providing that "Circuit judges * * * shall have power at chambers * * * to legalize the adoption of children," while section 2994 R. L. 1915 provides that "An adopted child, whether adopted by decree or judgment of a judge or court, or by an agreement of adoption legalized by a judge or court, or by an agreement of adoption duly acknowledged and recorded according to law, shall inherit estate undisposed of by will from its adopting parents * * *." The foregoing is a re-enactment of Act 83 Session Laws of 1905. Act 47 Session Laws of 1915, approved April 6, 1915, pro-

vides: "Section 1. Any proper person not married, or a husband and wife jointly, may petition a judge of the circuit court of the circuit in which they reside, or a judge of the circuit court of the circuit in which the child resides for leave to adopt a minor child not theirs by birth, and for a change of the name of such child. A written consent must be given to such adoption by the child, if of the age of sixteen years, and by each of his or her living legal parents who is not hopelessly insane, habitually intemperate, or has not abandoned such child for a period of six months, or has not voluntarily surrendered the care and custody of such child to another for a period of two years or over, which fact * * * shall be found by the judge at the time of hearing the petition and such finding noted in the order. If the parents are unknown or have so abandoned or surrendered said child, such consent to adoption shall be signed by the legal guardian of such child * * *." "Section 2. If the judge is satisfied of the ability of the petitioner to bring up and educate the child properly * * * he shall make an order setting forth the facts and declaring that from that date, to all legal intents and purposes, such child is the child of the petitioner and that its name is thereby changed." "Section 3. All laws and parts of laws in conflict herewith are hereby repealed, and the proceedings herein set forth for the adoption of minors shall supersede all other methods of adoption heretofore legal."

The effect of this act is to repeal the only laws existing in this Territory authorizing the adoption of children and prescribing and providing a procedure therefor and as the same was in full force and effect at the time of the decree of adoption of the petitioners by the circuit judge such adoption was entirely unauthorized by law and is null and void.

As this decision disposes of the entire controversy we

do not conceive it to be necessary to dwell upon the other question.

*W. J. Robinson* for petitioners.

*Andrews & Pittman* for respondent.

### CONCURRING OPINION OF COKE, C. J.

I am in accord with the conclusion reached in the majority opinion. I base my concurrence, however, solely upon the effect of Act 47 S. L. 1915, which I think necessarily confines adoption proceedings in this Territory to minors. The opinion herein overruled *Souza* v. *Lusitana Society*, 24 Haw. 396. The error there would not have occurred but for the failure of counsel to call to the attention of the court the existence of Act 47 S. L. 1915, by virtue of which section 2994 R. L. 1915 was repealed.