Smith v. Lindsay, 20 Haw. 330.

## WILLIAM O. SMITH, SAMUEL M. DAMON, E. FAXON BISHOP, ALBERT F. JUDD AND ALFRED W. CARTER, TRUSTEES UNDER THE WILL OF BERNICE PAUAHI BISHOP, DECEASED, *v.* ALEXANDER LINDSAY, JR., ATTORNEY GENERAL OF THE TERRITORY OF HAWAII.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED DECEMBER 8, 1910.          ·          DECIDED DECEMBER 19, 1910.

PERRY AND DE BOLT, JJ., AND CIRCUIT JUDGE WHITNEY IN PLACE OF HARTWELL, C.J.

WILLS—*construction.*

> In the will of Bernice Pauahi Bishop the direction to the trustees "to devote a portion of each year's income to the support and education of orphans and others in indigent circumstances" refers to support and education at the Kamehameha Schools only and not to support independently of education.

### OPINION OF THE COURT BY PERRY, J.

This is a bill by the trustees under the will of Bernice Pauahi Bishop, deceased, for a construction of the will. The respondent appeals from the decree of a circuit judge. After giving to certain individuals life estates in various parcels of land and making other specific bequests, the testatrix, in paragraph thirteen, makes the following provisions: "I give, devise and bequeath all of the rest, residue and remainder of my estates real and personal, wherever situated unto the trustees below named, their heirs and assigns forever, to hold upon the following trusts, namely: to erect and maintain in the Hawaiian Islands two schools, each for boarding and day scholars, one for boys and one for girls; to be known as, and called the Kamehameha Schools. I direct my trustees to expend such amount as they may deem best, not to exceed however one-half of the fund which may come into their hands, in the purchase of suitable premises, the erection of school buildings and

in furnishing the same with the necessary and appropriate fix-
tures, furniture and apparatus. I direct my trustees to invest
the remainder of my estate in such manner as they may think
best, and to expend the annual income in the maintenance of
said schools; meaning thereby the salaries of teachers, the re-
pairing of buildings and other incidental expenses; and to de-
vote a portion of each year's income to the support and educa-
tion of orphans and others in indigent circumstances, giving the
preference to Hawaiians of pure and part aboriginal blood; the
proportion in which said annual income is to be divided among
the various objects above mentioned to be determined solely by
my said trustees, they to have full discretion. I desire my trus-
tees to provide first and chiefly a good education in the common
English branches, and also instruction in morals and in such
useful knowledge as may tend to make good and industrious
men and women, and I desire instruction in the higher branches
to be subsidiary to the foregoing objects. For the purposes
aforesaid I grant unto my said trustees full power to lease or
sell any portion of my real estate, and to reinvest the proceeds
and the balance of my estate in real estate, or in such other
manner as to my said trustees may seem best. I also give unto
my said trustees full power to make all such rules and regula-
tions as they may deem necessary for the government of said
schools and to regulate the admission of pupils, and the same to
alter, amend and publish upon a vote of a majority of said trus-
tees. I also direct that my said trustees shall annually make a
full and complete report of all receipts and expenditures, and of
the condition of said schools to the Chief Justice of the Supreme
Court, or other highest judicial officer of this country; and
shall also file before him annually an inventory of the property
in their hands and how invested, and to publish the same in
some newspaper published in said Honolulu; I also direct my
said trustees to keep said school buildings insured in good com-
panies, and in case of loss to expend the amounts recovered in
replacing or repairing said buildings. I also direct that the

teachers of said scholars shall forever be persons of the Protestant religion, but I do not intend that the choice should be restricted to persons of any particular sect of Protestants." The remainder of the will relates to the appointment and powers of the trustees and to other specific bequests. Of the two codicils no portion is claimed to throw light on the questions involved in this case save paragraph four of the second, reading as follows: "Of the two schools mentioned in the thirteenth article of my said will, I direct that the school for boys shall be well established and in efficient operation before any money is expended or anything is undertaken on account of the new school for girls. It is my desire that my trustees should do thorough work in regard to said schools as far as they go; and I authorize them to defer action in regard to the establishment of said school for girls, if in their opinion from the condition of my estate it may be expedient, until the life estates created by my said will have expired, and the lands so given shall have fallen into the general fund. I also direct that my said trustees shall have power to determine to what extent said schools shall be industrial, mechanical, or agricultural; and also to determine if tuition shall be charged in any case." The prayer of the bill is that the trustees be instructed "whether the direction in the thirteenth clause of said will 'to devote a portion of each year's income to the support and education of orphans and others in indigent circumstances, giving the preference to Hawaiians of pure or part aboriginal blood' should be construed as referring to such support and education as can properly be given in connection with the Kamehameha Schools in said thirteenth clause referred to or whether said direction should be construed to mean the support and education of such persons elsewhere than at said schools and whether in any case support can be given independently of education."

The first sentence of paragraph thirteen, standing by itself, is free from ambiguity. The whole of the residue is given to trustees and the trust is clearly expressed to be the establish-

ment and maintenance of the two Kamehameha schools. Is there anything in the remainder of the paragraph inconsistent with this provision? We think not. The remainder consists merely of more specific directions for the accomplishment of the object already expressed. First the trustees are directed to expend not exceeding one-half of the principal for the acquirement of the initial equipment, including lands, buildings, furniture and apparatus, then they are directed to invest the unexpended portion of the principal and to expend the annual income of that portion in the maintenance of the schools. These two provisions supplement each other and, if carried out, furnish a complete school in operation. To avoid possible doubts, however, the testatrix proceeds to specify what she means when she speaks of the "maintenance" of the schools and defines that term as including the salaries of teachers, repairs of buildings, incidentals, and aid to indigent pupils to enable them to attend. Discretion is then given to the trustees to apportion this annual income among these "various objects" or items of maintenance. The scheme of charity through the medium of these two schools is complete. Its various parts fit well each with the other. There is no inconsistency. All of the other provisions of the paragraph relate to these schools. Why not this provision also? The particular words under consideration "and devote a portion of each year's income to the support and education of orphans and others in indigent circumstances" are easily capable of the construction that they relate to support and education at these schools. This provision is closely associated with the others of the paragraph, all of which relate to the one subject. Grammatically, by merely substituting a colon for the semicolon after the words "maintenance of said schools," all vestige of doubt of the correctness of this construction would disappear. From the point of view of the testatrix this provision for indigent orphans and others would be highly desirable, even if not indispensable, to complete the effectuation of her main charitable object. Necessary to a successful school

are not only initial equipment, repairs of that equipment, incidentals and teachers, but also pupils, and if it was the wish of the testatrix to extend the benefits of her schools to the indigent young this would be the natural and appropriate method of accomplishing that purpose and expressing that object. The argument that if it had been the intention of the testatrix to afford the support and education in question at the schools she would not have spoken of expending or dividing the income does not appeal to us. Free support and education cannot be furnished, even in her own schools, without the expenditure of income or other moneys.

The construction contended for by the respondent that the support and education contemplated was to be furnished elsewhere than at the schools and that support can be furnished independently of education would require undue straining of the language used. Ordinarily it would be expected that such a broad additional method of dispensing charity, so radically different from that provided for in the remainder of the paragraph, would be treated of in a separate provision with at least a few specific directions and limitations as to the duties of the trustees in that regard. Such a subject would scarcely be attempted to be covered by an insignificant sentence or part of a sentence in the middle of a lengthy paragraph, all other provisions of which are descriptive of the powers and duties of the trustees relating to the schools. In the paragraph under consideration power is given to the trustees to make rules and regulations for the government of the schools and to alter the same, and it is directed that they report annually to a judicial tribunal concerning the condition of the schools and that the teachers shall forever be persons of a stated religion. No similar directions or limitations are made concerning the other important charity claimed by the respondent to be provided for.

The grant of power to the trustees in paragraph four of the second codicil "to determine if tuition shall be charged in any case" is not, in our opinion, inconsistent with the provisions

of paragraph thirteen as we construe them. There is nothing in paragraph thirteen to indicate that either tuition or board and lodging at the schools shall be free save in the instances provided for concerning indigent orphans and others. By the second codicil it was apparently the desire of the testatrix to extend the power of the trustees relating to tuition, and while it may be that she could appropriately have expressed this as a power to determine "if tuition shall be free in any case" she could, with equal propriety, authorize the trustees to determine, as she did, "if tuition shall be charged in any case." Each method of expression would occur as readily to the ordinary mind as the other.

In our opinion the clause under consideration refers to support and education at the Kamehameha Schools only and not to support independently of education. The decree appealed from is affirmed.

*S. M. Ballou (Kinney, Ballou, Prosser & Anderson* on the brief) for plaintiffs.

*W. L. Stanley (Holmes, Stanley & Olson* on the brief) for defendant.