W. O. SMITH, E. F. BISHOP, A. F. JUDD, WILLIAM
WILLIAMSON AND R. H. TRENT, TRUSTEES
UNDER THE WILL AND OF THE ESTATE OF
BERNICE P. BISHOP, DECEASED, *v.* WILLIAM
B. LYMER, ATTORNEY GENERAL OF THE TER-
RITORY OF HAWAII.

No. 1672.

CROSS-APPEALS FROM CIRCUIT JUDGE FIRST CIRCUIT.
HON. J. J. BANKS, JUDGE.

SUBMITTED APRIL 14, 1926.                    DECIDED MAY 19, 1926.

PERRY, C. J., LINDSAY, J., AND CIRCUIT JUDGE MASSEE IN
PLACE OF BANKS, J., DISQUALIFIED.

TRUSTS—*powers of trustees—authority to sell real estate.*

When by her will testatrix devised the major portion of her
estate to trustees in trust "to erect and maintain in the Hawaiian
Islands" two schools to be known as the Kamehameha Schools,
and it appears that the school buildings and plant erected by the
trustees many years ago pursuant to said will have become worn
out and unsuited to their purpose and the will provides that the
trustees shall have "the most ample power to dispose of any
lands," the will further providing that "said trustees shall not
sell any real estate" but to "continue and manage the same unless
in their opinion a sale may be necessary for the establishment
and maintenance of said schools or for the best interest of my
estate," the trustees have authority to disuse and dispose of
such worn-out and unsuitable buildings and plant, and to erect
and maintain new buildings and plant in place thereof; and for
such contemplated purpose the trustees are authorized to sell
portions of the real estate forming part of the corpus of the
trust and apply the proceeds thereof toward the cost of said
new buildings and plant.

SAME—*realtors—employment of—compensation.*

Where, in a proper case, the trustees have reason to believe
that, by engaging the expert services of a realtor, their endeavors
to sell land will be facilitated and purchasers and higher prices

Opinion of the Court.

more readily obtained, the trustees may employ and pay for the services of a realtor; the compensation to be allowed such realtor to be in such reasonable amount as the court in the exercise of its sound discretion may deem proper under all the facts and circumstances of the case.

SAME—*trustees—compensation—final payment.*

In a perpetual trust such as is involved herein, when the trustees sell a portion of the corpus of the trust estate and apply the proceeds thereof toward the cost of erection and equipment of a new and complete plant for school purposes the funds so applied, not in the ordinary course of events to come back to the trustees or be available for investment or otherwise, constitute a final payment within contemplation of section 2544, R. L. 1925, and the trustees are entitled to charge and receive the commissions usually allowed on final payments.

OPINION OF THE COURT BY LINDSAY, J.

The petitioners, who are trustees under the will and of the estate of Bernice P. Bishop, deceased, filed their petition praying that they be advised and instructed as to certain matters and things hereinafter referred to.

From the petition it appears that, pursuant to the directions contained in the will and codicils of the testatrix, the trustees did erect and establish the Kamehameha Schools in Honolulu, the school for boys having been completed and opened in the year 1887, and the school for girls in the year 1894, since which time the trustees have operated and maintained the same; that the original endowment for the establishment and maintenance of said schools consisted entirely of real estate which was valued at approximately $474,000; since the inception of the trust, certain of said real estate has been sold and certain other real estate has been acquired by the trustees, and the value of the real estate now owned and held by the trustees is of the approximate value of $9,424,249; the trustees also have in possession funds and securities of the value of approximately $1,004,798.39 representing the corpus of the estate, being the proceeds of sales of land;

the trustees also have a collectible claim against the United States government for a refund of income taxes amounting to $146,370.

The present gross annual income of the estate is approximately $450,000, and the annual expenditures amount to about $408,000, and upon the expiration of old leases and the obtaining of higher rentals under new leases the trustees expect that the income of the estate will gradually increase; some of the lands held by the trustees are at present productive of little or no income and might be sold with advantage to the estate; the buildings of the Kamehameha Schools are mainly of wooden construction and of obsolete type, are subject to attack by borers and ants, and are rapidly deteriorating, and, if they are to be retained, will require extensive and expensive repairs which it would not be desirable to make if the trustees are authorized to sell portions of the real estate and to use the proceeds of said sale for the purpose of defraying the cost of erecting new buildings.

The trustees propose, if they be so authorized, to construct and erect on the land belonging to said estate, either on the present or another site, an entire new school plant for both the boys' and girls' schools, the buildings of which will be of modern type and fireproof and insect proof construction. The estimated cost of such new buildings and plant is $2,251,773, and the time required to complete the same is estimated at five years; the cost of maintenance and operation of such new schools and plant plus the ordinary expense of management and operation of the trust estate is estimated at $418,000 per annum, and the annual income of the estate five years hence is estimated at $550,000; the trustees believe that the well-being and successful continued operation of said Kamehameha Schools require that they be moved from their present location to a more desirable location with more

modern buildings and facilities, or be rebuilt in similar fashion upon the area of the present site.

The trustees are advised by counsel that, although the said will and codicils provided for and authorized the erection of the school buildings in the first instance, they do not expressly provide for the contingency which has arisen, namely, the wearing out of said buildings and the necessity of replacing them with new buildings, and that though said will and codicils authorized the trustees to expend not exceeding one-half of the corpus of the estate in the purchase of suitable premises (if none of the lands devised by the will were suitable for such purpose) for said schools and for the erection and furnishing of the buildings, they do not expressly authorize the further sale of other lands belonging to the estate for the purpose of obtaining funds for the erection and equipment of new buildings; and the trustees are further advised by counsel that they cannot safely proceed in the premises without the advice and authorization of the court; the trustees are also in doubt as to whether they would be authorized, in selling any lands for such purpose, to place the sale thereof in the hands of a real estate broker and thereupon to pay the usual broker's commission; also, whether, upon making payments for or on account of the construction of such new buildings and plant, the trustees would be entitled to charge and receive the commission allowed by law as upon the final payment of trust moneys.

The petitioners pray that they may be advised and instructed:

(1) Whether they have authority under said will and codicils to disuse and dispose of the present school buildings and plant, and to erect and maintain in the place thereof new buildings and plant in accordance with the aforesaid proposed plans.

(2) Whether for the purpose of erecting, furnishing and equipping such new buildings and plant, and to defray the cost thereof, lands devised by said will and codicils and now forming part of the corpus of the trust estate may be sold by the trustees and whether the funds and securities aforesaid being corpus of the trust estate may be used for such purpose.

(3) Whether they are authorized to pay broker's fees for selling lands, and whether they would be entitled to charge and receive commissions as for final payment of moneys as aforesaid.

The respondent filed an answer admitting the allegations of the bill, and submitted that the petitioners may be advised accordingly.

The circuit judge, in a written opinion, answered questions 1 and 2 in the affirmative. As to question No. 3, the circuit judge held that it is within the discretion of the trustees to employ and pay a real estate broker to sell land for them if the trustees have reason to believe, that by so doing, the sale will be facilitated and purchasers therefor more readily obtained. The circuit judge further held that the trustees would not be entitled to charge any fees or commissions as or for final payment of moneys expended by them in the erection, furnishing or equipping of the proposed new buildings and plant. A decree having been entered in conformity with the opinion of the circuit judge, both parties have perfected appeals from said decree.

In this court the sole error assigned by petitioners is that the circuit judge erred in decreeing that the petitioners would not be entitled to charge or receive commissions, otherwise petitioners submit that the decree of the circuit judge is sound and should be affirmed by this court.

The only error assigned by respondent is to the ruling

of the circuit judge that the trustees may, in the exercise of their discretion employ the services of a real estate broker in effecting the contemplated sales of real estate. Respondent submits that in other respects the decree appealed from should stand.

No error having been assigned by either of the appealing parties to the ruling of the circuit judge as to questions 1 and 2, and the briefs of the parties containing no argument either in support or in derogation of said ruling, we have entertained some doubt as to the propriety of this court's considering the same on this appeal. We have determined, however, in view of the public nature of the trust involved and the importance of the questions presented, that it is our duty to review the decree as a whole.

The will and two codicils thereto of the testatrix, after making numerous legacies, gave, devised and bequeathed all of the rest, residue and remainder of her property to trustees, upon trust to erect and maintain two schools, to be known as the Kamehameha Schools.

All that is said by testatrix concerning the power of her trustees to sell real estate is to be found in paragraph 13 of the will and in paragraph 17 of the first codicil thereto. The material parts of these paragraphs read as follows:

Paragraph 13 (of will). "I give, devise and bequeath all of the rest, residue and remainder of my estate real and personal, wherever situated unto the trustees below named, their heirs and assigns forever, to hold upon the following trusts, namely: to erect and maintain in the Hawaiian Islands two schools, each for boarding and day scholars, one for boys and one for girls, to be known as, and called the Kamehameha Schools. I direct my trustees to expend such amount as they may deem best, not to exceed however one-half of the fund which may come

into their hands, in the purchase of suitable premises, the erection of school buildings, and in furnishing the same with the necessary and appropriate fixtures furniture and apparatus. I direct my trustees to invest the remainder of my estate in such manner as they may think best, and to expend the annual income in the maintenance of said schools; meaning thereby the salaries of teachers, the repairing of buildings and other incidental expenses; and to devote a portion of each year's income to the support and education of orphans, and others in indigent circumstances, giving the preference to Hawaiians of pure or part aboriginal blood; the proportion in which said annual income is to be divided among the various objects above mentioned to be determined solely by my said trustees they to have full discretion. * * *. For the purposes aforesaid I grant unto my said trustees full power to lease or sell any portion of my real estate, and to reinvest the proceeds and the balance of my estate in real estate, or in such other manner as to my said trustees may seem best. * * *. I also direct my said trustees to keep said school buildings insured in good companies, and in case of loss to expend the amounts recovered in replacing or repairing said buildings. * * *."

Paragraph 17 (of first codicil). "I give unto the trustees named in my said will the most ample power to sell and dispose of any lands or other portions of my estate, and to exchange lands and otherwise dispose of the same; and to purchase land, and to take leases of land whenever they think it expedient, and generally to make such investments as they consider best; but I direct that my said trustees shall not purchase lands for said schools if any lands come into their possession under my will which in their opinion may be suitable for such purpose; and I further direct that my said trustees shall not sell any real estate, cattle ranches, or other property, but to

continue and manage the same, unless in their opinion a
sale may be necessary for the establishment or mainte-
nance of said schools, or for the best interest of my
estate. * * *."

From the foregoing paragraphs of the will and codicil
it is clear that, under certain circumstances, the trustees
are empowered to sell portions of the land belonging to
the trust estate and to reinvest the proceeds of such sales
in other forms of property. This court has so held in
*Hyde* v. *Smith,* 11 Haw. 535, in which case this court
further held that such sales may be made by the trustees
without application to a court of equity for permission
so to do. The question here presented, however, is not
whether sales of land may be made and the proceeds
therefrom reinvested, but may the trustees, under the
circumstances disclosed by the petition, erect, furnish
and equip an entirely new plant to take the place of the
original and now worn-out plant, and, in order to obtain
the funds necessary for this purpose, may the trustees sell
portions of the land belonging to the trust estate?

Upon principle as well as upon a consideration of the
intention of the testatrix as expressed in her will, there
can be no doubt that the trustees are entitled to sell
lands of the estate for the purpose in view. The express
command of testatrix to her trustees is that they are to
erect and *maintain* Kamehameha Schools, and, by para-
graph 17 of the first codicil, the trustees are expressly
given authority, when in their opinion a sale of land is
necessary "for the establishment or maintenance of said
schools," to make such sale. No other construction would
carry out the clear intention of testatrix to found and
continue in perpetuity the institution towards which she
was devoting practically all of her large estate. The
mandate of testatrix to her trustees to erect and *maintain*
the institution in question, coupled as it is with the

power to sell lands when such a course is necessary for the *maintenance* thereof, clearly shows that, in thus expressing her intention, testatrix had in mind the very contingency that has arisen, namely, the wearing out, in the course of time, of the original plant and the necessity for the replacement thereof. We therefore are of the opinion that the circuit judge rightly decided and decreed that the trustees have the authority to sell the lands and to devote the proceeds thereof to the ends contemplated.

We cannot agree with the contention of respondent that the circuit judge erred in holding and advising the trustees that it is within the discretion of said trustees to employ and pay a real estate broker to sell land if they have reason to believe that by so doing the sale of the land would be facilitated and purchasers therefor would more readily be obtained than otherwise. If the trustees have reason to believe, that by engaging the expert services of a realtor, their endeavors to sell land will be facilitated and purchasers and higher prices more readily obtained, the neglect of the trustees to avail themselves of such valuable services would not be commendable, for in making sales of the trust property the paramount duty of the trustees is to obtain the best possible price. In *Estate of Wichman,* 27 Haw. 780, this court has recognized the principle that, in a proper case, a trustee may make use of and pay for the services of a realtor in the sale of land, and has laid down the following test as to when the trustees may resort to such services: "The ordinary trustee is bound to exercise that care in the conversion of trust property which an ordinarily careful and prudent man would exercise in the disposition of his own property. But the ordinary trustee does not possess nor is he expected to possess expert knowledge upon real estate. It is a matter of common knowledge that the ordinary trustee is not a realtor nor are the knowledge

and experience of a realtor expected of him in the exercise of his duties as trustee. And so if the ordinarily careful and prudent man in the disposition of his real property should deem it necessary in the exercise of sound discretion to consult and secure the advice and service of one who by study, experience and observation is learned in the handling and selling of real estate then the trustee would under similar circumstances be justified in securing such advice and service, and for the reasonable cost thereof he would be entitled to reimbursement by the court of his appointment. This being so the situation resolves itself into one comparable with that of the trustee employing an attorney, and the rule of law applicable to such employment applies equally to a trustee who employs a realtor."

In affirming the principle announced in *Estate of Wichman, supra,* that in a proper case a trustee may employ a realtor in the sale of lands, we desire to emphasize what we there said regarding the amount of compensation allowable to realtors. As we said in that case, "such compensation, however, to be only in such reasonable amount as the court in the exercise of its sound discretion may deem proper under all the facts and circumstances of the case."

The circuit judge in the decree appealed from held, that, in the event of the sale of land and the devotion of the proceeds thereof to the projected physical rehabilitation of the institution, the money so devoted would not be such a "final payment" as would entitle the trustees to charge and receive the commissions usually allowed to trustees upon final payments. In his opinion on this question the circuit judge said: "I am of the opinion that the conversion of the corpus of a trust estate into cash and the reinvestment of the money in other property is not a final payment within the meaning

of the statute. The trustees therefore are not entitled to the statutory commission of 2½ per cent and I so advise them."

There is no express statute in this jurisdiction allowing commissions or other compensation to trustees for their services in administering trust estates. By long and continued judicial construction, however, section 2544, R. L. 1925, which fixes the compensation of executors, administrators and guardians, has been held to apply by analogy to trustees, and this construction is now so intrenched as to admit of no holding to the contrary. Thus construed, the statute provides that executors, administrators, guardians and trustees shall be allowed the following commissions upon all moneys received and accounted for by them, that is to say: "Upon all moneys received representing the estate at the time of the institution of the trust, such as cash in hand and moneys realized from securities, investments, and from sales of real estate and personal property other than interest, rents, dividends and other profits coming due after the inception of the trust, two and one-half per centum. Upon the final payment thereof or any part thereof, two and one-half per centum; provided, however, that no commission shall be allowed as for final payments of such moneys except upon amounts actually expended and upon balances paid into court or to the parties thereunto entitled, upon the final settlement of the services for which such executors, administrators or guardians shall have been appointed and qualified."

It is obvious that in a perpetual trust such as is here involved, the trustees will never, strictly speaking, be called upon to make a "final payment" to beneficiaries for at no time will it be the duty of the trustees to pay the balance of the trust estate into court "or to the parties thereunto entitled." It is contended, however, by

the trustees that the payment herein contemplated is in effect a final payment and that on making the same they will be entitled to the commissions usually allowed. The theory of the trustees is that, when the trustees shall have segregated from the corpus of the estate the funds necessary for the permanent improvements proposed, and applied the same to said improvements, the funds so devoted will never in the nature of things come back to the trustees or be available for investment or otherwise, hence the appropriation of said funds to the objects indicated is in fact a final payment within the meaning of the statute.

The precise question involved has never been before this court, although a somewhat similar question was, in the year 1897, decided by Judd, C. J., sitting as chancellor. On that occasion, from the annual account filed by the trustees, it appeared that the trustees had sold a piece of land belonging to the estate for $30,000 and used the money toward defraying the cost of one of the schools. The trustees claimed commissions on this sum as money "actually expended" and therefore constituting a final payment of the same. The master to whom the account was referred questioned the propriety of this claim. In his decision sustaining the claim of the trustees, the chancellor said: "I am satisfied that the charge of commissions on the $30,000 for which the Keoua Hale premises sold for is proper. This sum was paid to the Bank of Bishop & Company to settle an overdraft which was used in building the Kamehameha School for Girls, directed to be established by the will of the late Mrs. B. P. Bishop. It is just the same as if the premises had been sold and its avails applied directly to the building of the school. There is, therefore, a final payment of this fund. It has been converted into buildings and forms a

part of the trust property. It is no longer available for investment for the purposes of drawing interest."

The theory of the circuit judge, in holding that the proposed payment may not be considered a final payment, appears to be that title to the plant to be erected with funds taken from the corpus of the estate will remain in the trustees as fully as was the former part of the corpus, and that the transaction in fact will constitute nothing more than a change of investments, and not a final payment. It is true that when the proposed sale of lands shall have been made and the proceeds thereof devoted to the contemplated permanent improvements, the trustees will in reality have divested themselves of no portion of the corpus of the estate, and title to the new species of property acquired will be and remain in the trustees as fully as was title to the property sold. In such a case the trustees will simply have changed part of the corpus from income-producing property to nonincome-producing property; nevertheless, in another and broader sense, it may be said that the payment made for the new permanent improvements is a final payment within contemplation of the statute, for the very nature of the trust herein presupposes permanency. The buildings to be erected will doubtless be peculiarly fitted to the required purposes and therefore unsuited to other purposes, and it would seem unlikely that, in the future, these buildings will be diverted from the uses to which they have been dedicated and devoted to other uses or offered for sale. The contemplated permanent improvements are of such a character as to imply, if not finality, at least such a long and continued existence as to, in all probability, amount to finality. It may be true, indeed, that in years to come the trustees may deem it wise to again make such drastic changes as to require a sale of the plant about to be constructed and a devotion of the proceeds

thereof to still another plant. The happening of such an event might seem to demonstrate that the expenditures now proposed had not constituted a final payment. The case of the $30,000 payment above referred to is in point. In that case, the trustees were allowed commission on the $30,000 expended in the erection of new buildings. If, in carrying out the present plans, these buildings are sold and a portion of the original cost thereof is realized and included in the cost of the new permanent improvements, such sum would clearly be no part of a final payment, for there can, of course, be but one final payment. Notwithstanding this apparent difficulty, the danger of double payment could be obviated by simply subtracting the sum thus realized from the sum to be expended on the new improvements. The same will be true in case future developments necessitate the sale of the present proposed improvements, and the fact that in such event a portion of the funds now to be spent may perhaps be returned to the trustees does not militate against the proposition that the expenditures now proposed should, for all practical purposes, be considered a final payment.

Qualified by what we have remarked concerning the possibility and impropriety of double payment, we are of the opinion that the expenditures contemplated will, within the meaning of the statute, constitute a final payment, and the trustees therefore will be entitled to charge and receive the customary commissions thereof.

A decree in conformity with this opinion will be entered on presentation.

*Robertson & Castle* for petitioners.

*W. B. Lymer,* Attorney General, and *Marguerite K. Ashford,* First Deputy Attorney General, for respondent.