GEORGE M. COLLINS, JOHN K. CLARKE, FRANK E. MIDKIFF AND EDWIN P. MURRAY, TRUSTEES UNDER THE WILL AND OF THE ESTATE OF BERNICE P. BISHOP, DECEASED, *v.* JOSEPH V. HODGSON, ATTORNEY GENERAL OF THE TERRITORY OF HAWAII.

No. 2502.

SUBMITTED JANUARY 4, 1943.    DECIDED JANUARY 16, 1943.

KEMP, C. J., PETERS, J., AND CIRCUIT JUDGE CRISTY IN PLACE OF LE BARON, J., DISQUALIFIED.

OPINION OF THE COURT BY KEMP, C. J.

This is an appeal by the attorney general of the Territory from an order of the circuit judge at chambers, in equity, entered after a hearing on the bill of the trustees of the Bernice Pauahi Bishop Estate for instructions as

to their right to use surplus income to defray the cost· of erecting new buildings for Kamehameha Boys' School.

The trustees being in doubt as to whether any part of the expenditures mentioned can be paid out of accumulated income, filed their bill for instructions in that regard. The bill alleged and the evidence shows in substance that in the latter part of 1938 the trustees began the erection of a new school for boys, to consist of units 3, 4 and 5, upon land belonging to the trust estate at Kapalama; that units 3 and 4 have been completed at a cost of $958,472.31 and that preliminary expenditures of $29,674.99 have already been made on unit 5; that but for said expenditures they would have had on hand on December 31, 1940, $1,068,-095.30 of liquid assets in the corpus account and $1,038,-821.68 of liquid assets in the accumulated income account, and that but for the expenditures of $988,147.30 the two accounts would have aggregated the sum of $2,106,916.98, and that the actual aggregate balance in said two accounts on said date, after the expenditure of said sum, is $1,118,-769.68. The expenditures so far made have not been allocated to either corpus or income and the object of the bill is to ascertain whether any part of said expenditures made and to be made in the erection of said buildings can be allocated to the surplus income account. The bill was filed on February 4, 1941, and on July 15, 1941, the attorney general answered and by paragraph VI of his answer averred that the expenditures involved should be paid out of and charged to the accumulated income account and not out of corpus· of the estate, and that in any event the trustees should not be entitled to commissions on said expenditures. However, on August 22, 1941, the answer of the attorney general was amended by striking out paragraph VI thereof and he now contends that only corpus funds may properly be used for said purpose. The question of trustees' commissions is not here involved.

The facts having a bearing upon the question presented are not in dispute. From the opinion of this court in *Smith* v. *Lymer*, 29 Haw. 169, decided in 1926, we learn that the school buildings and plant erected by the trustees between 1887 and 1894 had become worn-out and unsuited to their purpose and the trustees proposed, if they had the authority, to erect an entirely new school plant for both the boys' and girls' schools at an estimated cost of $2,251,-773. The estate then had liquid assets of $1,004,798 representing corpus, and the trustees proposed, if so authorized, to sell lands belonging to the estate to supplement said corpus fund available to defray the expense of said new buildings and plant. The trustees were advised, in response to their bill for instructions, that they had authority under the will to disuse and dispose of the old buildings and plant and to erect and maintain in the place thereof new buildings and plant and that for the purpose of erecting, furnishing and equipping such new buildings and plant and to defray the cost thereof lands devised by said will might be sold.

The evidence shows that the new school plant consists of five units and that the cost of units 1 and 2 of the new schools was paid out of and charged to the corpus account and that the then trustees claimed and were allowed their commissions on the amount so expended. The question of the correctness of the action of the trustees in erecting and paying for units 1 and 2 is not involved in this case. In fact, no one now contends that corpus funds may not properly be used for the erection of the new school buildings, the only issue being, may accumulated surplus income also be used for that purpose?

The pertinent portion of article thirteen of Mrs. Bishop's will consists of a devise of the residue and remainder of her estate to the trustees upon the following trusts: "to erect and maintain in the Hawaiian Islands

two schools * * * one for boys and one for girls, to be
known as, and called the Kamehameha Schools." By the
same paragraph the testatrix directed her trustees "to
expend such amount as they may deem best, not to exceed
however one-half of the fund which may come into their
hands, in the purchase of suitable premises, the erection
of school buildings and in furnishing the same with the
necessary and appropriate fixtures, furniture and appa-
ratus." She further directed her trustees "to invest the
remainder of my estate in such manner as they may think
best, and to expend the annual income in the maintenance
of said schools; meaning thereby the salaries of teachers,
the repairing of buildings and other incidental expenses;
and to devote a portion of each year's income to the sup-
port and education of orphans and others in indigent cir-
cumstances, giving preference to Hawaiians of pure or
part aboriginal blood; the proportion in which said annual
income is to be divided among the various objects above
mentioned to be determined solely by my said trustees,
they to have full discretion."

By the seventeenth paragraph of the first codicil the
testatrix directed that "my said trustees shall not sell any
real estate, cattle ranches, or other property, but to con-
tinue and manage the same, unless in their opinion a sale
may be necessary for the establishment or maintenance of
said schools, or for the best interest of my estate." The
foregoing provisions were referred to in *Smith* v. *Lymer*,
*supra*, in support of the holding that land may be sold for
the purpose of raising funds to pay for new buildings to
replace old ones. The new buildings referred to are the
four units already erected and the one in course of con-
struction. Emphasis was placed on the expression "estab-
lishment or maintenance" of said schools in the seven-
teenth paragraph of the first codicil.

The circuit judge decided, in effect, that the words

"maintenance * * * meaning thereby the salaries * * * repairs and other incidental expenses," used by the testatrix in defining the purposes for which income may be expended, include any purpose which sound business judgment dictates, and that to require the trustees to use corpus only for the erection of new school buildings might so deplete the corpus of the trust estate that the income would not be sufficient to carry on the charity as provided by the testatrix and would be decidedly poor business and in direct violation of sound business judgment. He interpreted the word "maintenance" to mean "to keep in a state of efficiency" and to practically nullify the restrictive words used by the testatrix following the word "maintenance." We think, however, that the economic benefit, if any, to accrue to the estate from the use of surplus income for the purpose of defraying the cost of said buildings cannot be taken advantage of if to do so would run counter to the intention of the testatrix in that regard. The *intention* of the testatrix is the "pole-star by which courts must steer." (*Rooke* v. *Queen's Hospital*, 12 Haw. 375, 379.)

The language used by the testatrix in the thirteenth paragraph of her will, standing alone, certainly does not admit of the construction that the trustees were left free to decide which fund was to be used to defray the expense of erecting school buildings. They were clearly directed to use corpus for that purpose.

Reference has been made in the briefs to the seventeenth paragraph of the first codicil. In the will the trustees had been given very broad discretionary powers to sell real estate and reinvest the proceeds. We think that the object of the provisions quoted from the first codicil was to limit the discretion of the trustees in the sale of real estate. There is nothing in the language used to indicate that the testatrix intended to modify the provisions of paragraph thirteen enumerating the purposes for which

income may be used. There are no other provisions in the will or codicils which, in our opinion, indicate an intention on the part of the testatrix to authorize the expenditure of income for purposes other than those enumerated in paragraph thirteen of the will. The testatrix apparently did not anticipate that there would be surplus income. She directed her trustees "to expend the annual income" (meaning, of course, the net annual income) for the purposes set forth in the thirteenth paragraph of her will, indicating that she intended that *all* of the net annual income should be expended in support of the charities for which she gave it.

Although the question of the propriety of the action of the trustees in accumulating so large a surplus of income is not an issue in this appeal, we feel impelled to comment upon it. The fact that more than one million dollars of income has accumulated makes it apparent that the expressed intention of the testatrix has not been complied with. The record does not disclose why the trustees have failed or have been unable to comply with the expressed intention of the testatrix in that regard. In *Smith* v. *Lindsay*, 20 Haw. 330, it was held that the direction to the trustees "to devote a portion of each year's income to the support and education of orphans and others in indigent circumstances" contained in the will of Mrs. Bishop, refers to support and education at the Kamehameha Schools only and not to support unconnected with education. It is not our purpose here to raise the question of the soundness of that decision. However, it may be said, that regardless of the soundness of the decision, the trustees were bound to adhere to it and in so doing were limited to a narrow field in dispensing support *and* education to orphans and others in indigent circumstances.

The record before us does not disclose over what period or why the income has been in excess of the expenditures.

**340**

Neither does it disclose facts from which it could be determined whether or not a continual increase in the surplus income is or may become inevitable. Our decision that under the terms of the will income as such cannot be used to defray the cost of buildings is not to be understood as having any reference to the power of the chancellor, on a proper bill and showing, to apply the doctrine of *cy pres* and authorize an inevitable surplus, if any, to be applied to some other use within the purview of that doctrine. (*Thatcher* v. *Lewis*, 335 Mo. 1130, 76 S. W. [2d] 677.)

The order appealed from is reversed and the trustees are instructed that no part of the income may be used for the purpose of defraying the expense of erecting the buildings mentioned in their bill.

*E. K. Kai*, Assistant Attorney General, for respondent-appellant.

*Robertson, Castle & Anthony* for complainants-appellees.