# IN THE MATTER OF THE ESTATE OF BERNICE PAUAHI BISHOP, DECEASED.

## No. 972.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.
HON. C. W. ASHFORD, JUDGE.

ARGUED JANUARY 24, 1917.                    DECIDED FEBRUARY 1, 1917.

ROBERTSON, C.J., QUARLES AND COKE, JJ.

JUDGES—*disqualification—pecuniary benefit.*

Where a majority of the justices of the supreme court acting under a power of appointment contained in a will, the justices receiving no reward or pecuniary benefit, fill a vacancy among the trustees under such will, they are not thereby disqualified from sitting in a case on appeal involving the validity of the appointment.

WILLS—*construction—appointment of trustees.*

The will of B named five trustees to execute a certain trust therein created, provided that the number of trustees should be kept at five, and provided that vacancies among the trustees should be "filled by the choice of a majority of the justices of the supreme court;" at the time the will took effect the justices, severally, exercised original jurisdiction in equity subject to appeal to the supreme court in banco; later all original jurisdiction in equity was transferred to circuit judges sitting at chambers in equity. Held, in construing the will, that it was the intention of the testatrix to vest the power of filling vacancies in the justices, as individuals, and not in the court which should exercise original jurisdiction in matters of the trust, and, consequently, that the transfer of sole original jurisdiction to circuit judges at chambers in equity did not transfer from the justices of the supreme court to the circuit judge the power of filling vacancies among the trustees under the will.

SAME—*same—words and phrases.*

Where an instrument creating a trust named trustees, fixed the number of trustees and provided that vacancies among the

trustees "should be filled by the choice of the majority of the justices of the supreme court," the word "choice" therein is synonymous with and means "appoint," and an appointment so made is not subject to confirmation or rejection by the circuit judge exercising original jurisdiction in matters relating to the trust.

TRUSTS—*appointment of trustee—judicial function.*

While a grantor of a trust cannot delegate a judicial function to any court, such function being created by law, the naked power of appointing in succession the trustees of a trust is not a judicial function but a power which may be delegated by the grantor.

OPINION OF THE COURT BY QUARLES, J.

In the will of Bernice P. Bishop, after making a number of devises and bequests, the testatrix devised the residue of her estate to five trustees therein appointed, to be held and used by them in the erection and maintenance in the Hawaiian Islands of two schools, one for boys and one for girls, to be called the Kamehameha Schools, a portion of the income for each year to be devoted to the support and education of orphans and others in indigent circumstances, giving the preference to Hawaiians of pure and part aboriginal blood. The estate is very large and of great value. Considerable discretion is left to the trustees in the execution of the trust and the furtherance of its objects. The testatrix named as such trustees her husband, Charles R. Bishop, Samuel M. Damon, Charles M. Hyde, Charles M. Cooke and William O. Smith, and under the paragraph naming them (14) are found the following provisions: "I direct that a majority of my said trustees may act in all cases, and may convey real estate, and perform all of the duties and powers hereby conferred; but three of them at least must join in all acts. I further direct that the number of my trustees shall be kept at five; and that vacancies shall be filled by the choice of a majority of the justices of the supreme court, the selection to be made from persons of the

protestant religion." This will was executed in 1883, the year before the testatrix died, and the will was admitted to probate December 2, 1884. Vacancies have occurred from time to time and have been filled so that on the 9th day of June, 1916, of the five trustees, namely, Samuel M. Damon, William O. Smith, E. Faxon Bishop, Albert F. Judd and Alfred W. Carter, only the first two mentioned were appointed by the testatrix. On June 9, 1916, the written resignation of Samuel M. Damon as such trustee was presented to the first judge of the first judicial circuit, who at chambers exercises original jurisdiction in equity, and has original jurisdiction of the trust created by said will, and on the petition of all of said trustees was by order then made accepted, thereby leaving a vacancy caused by the said resignation of said Samuel M. Damon. On the same day the said vacancy was brought to the attention of the justices of this court by presenting said resignation, and all of the justices, exercising the power delegated to them in the said will, appointed William Williamson to succeed the said Samuel M. Damon as trustee under the provisions of said will. Thereupon and on the same day the trustees Smith, Bishop, Judd and Carter presented to the said circuit judge their petition setting forth the qualifications of said Williamson as such trustee and his said appointment by the justices of this court and prayed that his appointment as aforesaid be confirmed by said circuit judge. A hearing on the said petition was immediately had when certain evidence touching the qualifications and fitness of the said William Williamson as such trustee was introduced before the said circuit judge. Thereafter, and on the 29th day of July, 1916, the said circuit judge in a document styled "Opinion and Decision" decided that the appointment of the said Williamson as aforesaid was without authority, null and void; made an order assuming to appoint Charles E. King as trustee to fill the said vacancy, and fixed his bond at $20,000 if given

separately, but providing, however, that a new joint bond on behalf of all of the trustees, including the said King, might be given in the sum of $100,000. Thereafter, and on August 3, 1916, a decree was filed, signed by the said circuit judge, adjudging the appointment of William Williamson as such trustee by the justices of this court to be null and void; appointing the said Charles E. King as a trustee under the said will in succession to Samuel M. Damon resigned, and providing for the execution in the alternative of one of the bonds beforementioned. From the said decree of the circuit judge the trustees have appealed to this court.

A written suggestion of the disqualifications of the justices of this court who made the said appointment of William Williamson as such trustee was filed in this court on the 2d day of December, 1916, wherein it is suggested that the said justices "have a pecuniary interest, direct or indirect, in this cause." The power of appointment delegated to a majority of the justices of this court in and by the said provision of the will aforesaid is a naked power without reward or pecuniary benefit to the justices or any of them. For this reason the suggestion as to the disqualification of the justices appointing the said William Williamson to fill the said vacancy was denied; and it was held, and is held, that the said justices are not disqualified from presiding at the hearing and determination of this appeal.

The ground upon which the learned circuit judge based his decision that the appointment of William Williamson by the justices of this court was without authority and void is that at the time of the death of the testatrix and prior thereto the supreme court of Hawaii and the justices thereof exercised original jurisdiction in equity, and by the rules of law and equity the court and the justices thereof were vested with the power to fill vacancies in the matter of trustees generally; that it was the intent of the testatrix to vest such power in the court and not in the individuals

who might from time to time "chance to fill the offices of a majority of the justices of the supreme court," and this view has been ably and learnedly insisted upon by counsel for Charles E. King. The fitness of the trustee appointed is not a matter for the circuit judge to determine, but the power and responsibility of so doing are vested by the testatrix in the justices of this court, a majority of whom must exercise such duty. It is not contended that the testatrix did not have the power of appointing the original trustees, or that she did not have the power, for the purpose of perpetuating the trust and carrying out the objects and purposes thereof, of providing in her will the mode and manner of filling vacancies among the trustees under the will, or that she did not have the power of prescribing what individuals, body or tribunal should exercise such power, the contention being that she intended that the judicial tribunal exercising control over the matters of the trust should exercise the power of filling vacancies, and that when, by the judiciary act of 1892, exclusive original jurisdiction in equity was vested in circuit judges sitting at chambers, the said power passed from the supreme court and justices thereof to the circuit judges and can only be exercised, under a proper construction of paragraph 14 of said will, by the circuit judge who, presiding at chambers in equity, has jurisdiction in equity. To support this contention cases in which it is claimed that the justices of the supreme court sitting in banco exercised original jurisdiction are cited as follows: *Tucker* v. *Est. of Metcalf,* 3 Haw. 180; *Davis* v. *Brewer,* 3 Haw. 359; *Wei See* v. *Young Sheong,* 3 Haw. 489; *In the Matter of the Estate of His Late Majesty Lunalilo,* 3 Haw. 519; *Unauna* v. *Armstrong,* 3 Haw. 705; *Kalakaua* v. *Keaweamahi,* 4 Haw. 577, and *Kalaeokekoi* v. *Kahele,* 4 Haw. 668.

In *Tucker* v. *Est. of Metcalf,* Chief Justice Allen, as chancellor, and Hartwell, Justice, sat in an equity case and made

an order referring the cause to a master to state an account in the matter of the dissolution of a partnership "with the agreement that Hartwell, J., should sit with the chancellor, and their decision be final." In Davis v. Brewer, Wei See v. Young Sheong (see concurring opinion of Hartwell, J.), In the Matter of the Estate of His Late Majesty Lunalilo, Unauna v. Armstrong, and Kalaeokekoi v. Kahele, the hearings in the supreme court were upon appeal, as a careful inspection of the decisions will show, except in the case last mentioned, but the record in this court shows that in that case a demurrer was heard by Judd, C. J., as chancellor, and sustained by him March 23, 1883, an appeal being taken from his decision on March 24, 1883. The decision upon this appeal, which is reported in 4 Haw. 668, was filed April 11, 1883. By constitutional and statutory provisions prior to the judiciary act of 1892 original jurisdiction in equity was vested in the supreme court and circuit courts. Such jurisdiction was exercised by the chief justice as chancellor, the first associate justice as vice-chancellor, and, subsequent to 1862, by the second associate justice, acting severally and not jointly, and from the decision of the chancellor, vice-chancellor or second associate justice an appeal lay to the supreme court in banco (Constituion 1852, Art. 86; Constitution 1864, Art. 68; Compiled Laws 1884, Secs. 847, 848). After the act of 1878 (see Compiled Laws 1884, p. 389), and prior to the judiciary act of 1892, the several justices of the supreme court sitting at chambers, and the several circuit judges, exercised original equity jurisdiction. A careful examination of the decisions shows that it was the rule by constitution, statute and practice for a single justice to sit in equity matters, his decision being subject to appeal to the supreme court in banco. To this rule, custom or practice there appears to have been only two exceptions, those in the cases of Tucker v. Est. of Metcalf, and Kalakaua v. Keaweamahi, where, by agreement,

the first named cause was submitted to the chancellor and Hartwell, J., and in the latter cause a demurrer was heard in the first instance by the full court, by consent, for the purpose of expediting the decree in the cause and making the decision on the demurrer final, analogous to reserving a question. The very fact that in these two last cases named the submission to more than one justice was by consent tends to show the departure made in these cases from the usual practice in equity matters wherein original jurisdiction in equity was exercised by a single justice sitting in equity at chambers. This practice obtained at the time the will of the testatrix was written, had obtained for many years prior thereto, and was in force at the time the will was probated and took effect; hence the provision of the will under consideration must be construed as being intended to vest and as vesting in the justices of this court as individuals, and not as a court, the power of filling vacan‹ cies among the trustees. If the authority to fill such vacancies had been delegated to the police magistrate of Honolulu, it would be evident that it was not in the mind of the testatrix that the particular judge or court exercising equity jurisdiction in other matters touching the trust should also have power to fill vacancies in the office of trustee under the will. Inasmuch as the justices of the supreme court at the time the will became effective did not act jointly or as a court in banco in exercising original jurisdiction, but acted severally, it would be extending the terms of the provision of the will under consideration to hold that the testatrix intended by the language used that when a trustee under the will dies or resigns the vacancy thereby occasioned should be filled by appointment made by the particular court exercising original equity jurisdiction in other matters pertaining to the trust. It is true that the testatrix in the will could not delegate a judicial function to any court; that such functions are created by law and not

by appointment of individuals. But the naked power of appointing in succession the trustees of the trust is not of itself a judicial function but a power which may be created by the grantor of a trust. If the testatrix had named the chancellor as the person to fill vacancies it might well be contended that she intended that the court exercising original equity jurisdiction should fill vacancies among the trustees under her will, and, consequently, that when the chief justice ceased to be chancellor and the powers of the chancellor were transferred to the circuit judge sitting at chambers in equity, that it was her intention that the latter should thereafter exercise such power of appointment. We think the conclusion is reasonable that the testatrix in naming a majority of the justices of this court intended that the individuals occupying the offices of chief justice and associate justices, or a majority of them, acting as individuals, should exercise the power of appointment, and not the supreme court, and that the language used is merely descriptive of the persons whom she intended should exercise the power. This conclusion is the more reasonable one when we reflect that the testatrix must have known of the changes which occur from time to time in the personnel of the justices of this court.

Construing the provision in the will of the testatrix touching the filling of vacancies among the trustees under the will as we do makes it unnecessary to review the many authorities to which we have been cited to the effect that when the judge of a certain court charged with the sole exercise of original jurisdiction of a particular subject, for instance, equity or probate, is vested with the power of filling vacancies among the trustees of a trust by the instrument creating the trust, that the grantor intended to vest the *court* with such power and not the *judge as an individual* who presides over such court, such authorities not being in point here. The delay and confusion that have

arisen in the matter before us are largely due to the improper action of the trustees under the will of the testatrix in petitioning the first circuit judge, sitting at chambers in equity, to confirm the appointment of William Williamson as trustee. The will does not provide that the choice or appointment made by the justices of this court should be subject to the approval or consent of any other officer or tribunal. The power of approval implies the power or right of disapproval—the power of vetoing the act of the justices of this court in exercising the power of appointment—and such veto power, if exercised as attempted by the learned circuit judge, would necessarily result in defeating the intent of the testatrix as expressed in the provisions of her will under consideration. The only proper petition to the circuit judge would be one asking that he name the amount of the bond to be given by the appointee and approve the same when given.

The learned circuit judge took the view that the word "choice" in the provision of the will of the testatrix under consideration is synonymous with and means "nominate," and does not mean "appoint," and he therefore concludes that the power of approving or rejecting a "nomination" made by the justices or a majority of the justices of this court rests with him. With this view counsel for Charles E. King does not concur, as in the argument on the appeal he expressed the view that the word "choice" is synonymous with and means "appoint," and with such view we fully agree.

The decree appealed from is reversed and the cause is remanded to the circuit judge sitting at chambers in equity with instructions to dismiss the petition asking for the approval of the appointment of William Williamson in sucession to Samuel M. Damon resigned, and for such further proceedings as are consistent with the views herein expressed.

*P. R. Bartlett* (*Holmes & Olson* with him on the brief) for the trustees.

*E. C. Peters* for Charles E. King.