HAWAI'I GOVERNMENT EMPLOYEES' ASSOCIA-
TION, AFSCME LOCAL 152, in its capacity as
the collective bargaining agent of certain Library
Assistants and Technicians employed by the State
of Hawai'i, Petitioner–Appellant, v. **PUBLIC
EMPLOYEES COMPENSATION APPEALS
BOARD OF THE STATE OF HAWAI'I** and
**DEPARTMENT OF PERSONNEL SERVICES OF
THE STATE OF HAWAI'I**, Respondents–Appellees

NO. 16130

(CIV. NO. 92–0455)

NOVEMBER 1, 1993

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE
MILKS IN PLACE OF ASSOCIATE JUDGE
WATANABE, DISQUALIFIED

## OPINION OF THE COURT BY HEEN, J.

On July 26, 1991, the Director (Director) of Respondent–Appellee Department of Personnel Services (DPS) of the State of Hawai'i created new classes for Library Assistants and Technicians within the State Library System and assigned them to salary ranges (SR) in the state compensation plan as follows:[1]

---

[1] *See infra* footnote 3 for the definition of state compensation plan.

| THEN CURRENT | NEW |
|---|---|
| Library Assistant I, SR–04 | |
| Library Assistant II, SR–05 | Library Assistant II, SR–05 |
| Library Assistant III, SR–07 | Library Assistant III, SR–07 |
| Library Assistant IV, SR–09 | Library Assistant IV, SR–09 |
| Library Technician V, SR–11 | Library Technician V, SR–11 |
| Library Technician VI, SR–14 | Library Technician VI, SR–13 |
| Library Technician VII, SR–16 | Library Technician VII, SR–15 |
| | Library Technician VIII, SR–17 |

On August 15, 1991, Petitioner–Appellant Hawai'i Government Employees' Association (HGEA), as the representative of the employees affected by the reallo cation, challenged Director's action by filing an "Initial Pricing Appeal" with Respondent–Appellee Public Employees' Compensation Appeals Board (PECAB) in accordance with Hawai'i Revised Statutes (HRS) § 77–4(e) (1985). [2] PECAB denied HGEA's appeal on January 7, 1992, and HGEA appealed to the circuit court. On April 30, 1992, the circuit court entered an order dismissing the appeal for lack of appellate jurisdiction. We affirm.

## I.

The single issue is whether PECAB was required to hold a contested case hearing in accordance with HRS chapter 91 (1985 and Supp. 1992) on HGEA's pricing appeal. A review of the provisions of HRS § 77–4 is essential to a resolution of the issue.

HRS § 77–4 had its genesis in Act 188, § 3, 1961 Haw. Sess. Laws 305, 306–07, whose legislative purpose was to "provide uniform policies and procedures in matters of compensation [for public employees] among the state and

---

[2] *See infra* footnote 5 and accompanying text for HGEA's authority to file a pricing appeal.

its political subdivisions in order to assure 'equal pay for equal work.'" Hse. Stand. Comm. Rep. No. 903, in 1961 House Journal, at 1018. The standing committee report noted that the "long and prevailing" struggle for uniformity in compensation matters "has been a compelling factor in motivating the Legislature to take action in this respect." *Id.* at 1021. In its present form, HRS § 77–4 includes several amendments enacted after Act 188; however, no subsequent enactments have affected the law's original purpose.

The goal of uniformity touted by Act 188 is achieved by a process where the directors of personnel or civil service for the state, the counties, and the judiciary meet in a conference every odd–numbered year to review the state compensation plan.[3] HRS § 77–4(a). The conference considers "the identification and price of bench mark classes;[4] policies and standards; rules and regulations and any and all areas in the plan which are not inconsistent with the intent and purpose" of HRS chapter 77. *Id.* (footnote added). Before October 15 of each odd–

---

[3] "Compensation plan" is the result of the assignment of all classes in the position classification plan to appropriate salary ranges in the salary structures.

"Position classification plan" means classes of positions arranged in a logical and systematic order.

"Salary range" means the group of steps, from minimum to maximum, to which a class may be assigned.

"Salary structure" means the number of steps and salary ranges prescribed in section 77–5(2) and section 77–13(a).

Hawai'i Revised Statutes (HRS) § 77–1 (1985).

[4] "Bench Mark class" means a class which is (A) pivotal in that the assignment of other classes within a series of classes may be made with reference to such class, (B) easily identifiable according to the

numbered year, HRS § 77–4(b) requires the conference to present its views and recommendations and a tentative compensation plan to PECAB, which is established in HRS § 77–4(c).

HRS § 77–4(c) requires PECAB to "adopt policies and standards relative to compensation[,]" and "to meet biennially to receive [the conference's] recommendations and comments relating to the compensation plan[,]" and allows PECAB to hold public hearings on the compensation plan. *Id.*

HRS § 77–4(c) also provides that affected persons and parties may file a "pricing appeal," *i.e.*, an appeal with PECAB from the pricing aspect of the compensation plan.[5] In other words, an appeal is allowed from that portion of the compensation plan in which classes are assigned to a salary range.[6] PECAB must conduct hearings on all pricing appeals and may make any necessary

---

nature of the duties and responsibilities of the positions within the class, and (C) common to all or most of the jurisdictions.

"Class" or "class of positions" means a group of positions sufficiently similar with respect to duties, authority, and responsibility so that the same title may reasonably be required for, and the same salary range may apply to, each position allocated to the class.

"Position" means a group of current duties and responsibilities legally assigned or delegated by competent authority to an officer or employee and performed on either a full– or part–time basis. *Id.*

[5] "Affected persons or parties" include employee organizations, departments, persons, and their respective representatives. *Id.*

[6] "Pricing" means the assignment of classes to salary range. *Id.*

adjustments to the compensation plan for classes for which appeals were filed in accordance with the policies and standards provided for in HRS § 77–4(c). HRS § 77–4(d).

Final adjustments to the compensation plan must be completed before the third Wednesday of January of every even–numbered year. *Id.* After the final adjustments have been completed, the individual directors must submit a report to the legislature, through the governor's office, of the final compensation plan and its cost for the legislature's information and approval. *Id.* Once approved, the compensation plan becomes effective on July 1 of the even–numbered year, and salary range assignments may not be appealed until the next biennial review. *Id.*

When new classes are created, HRS § 77–4(e) requires the Director to assign them "to salary ranges on the basis of the policies and standards" provided for in chapter 77. Such assignments are effective immediately if funds are available and remain in effect until the next compensation plan is adopted. *Id.* Pricing appeals from those initial assignments may be heard by PECAB every six months or at the time of the next biennial review. *Id.* The appeal hearings are conducted in accordance with the procedures prescribed in HRS § 77–4(c) and (d) and PECAB's rules and regulations. *Id.* After completing the hearings, PECAB is required to make any necessary adjustments to the appealed classes in accordance with the policies and standards of the statute. *Id.* The final adjustments for the initial pricing appeals must be completed and submitted to the legislature at the same time as the compensation plan. *Id.* In the instant case, the reallocations were made in accordance with HRS § 77–4(e).

## II.

### A.

HGEA argues that (1) HRS § 77–4(c) establishes two separate and distinct types of hearings: public hearings on the compensation plan and pricing appeal hearings; and (2) pricing appeal hearings are contested case hearings because they determine the "legal rights, duties, or privileges of specific parties," HRS § 91–1(5) (1985), and are adjudicative functions as described in *Shoreline Transp., Inc. v. Robert's Tours and Transp., Inc.*, 70 Haw. 585, 779 P.2d 868 (1989).

> "Rulemaking is the process by which an agency lays down new prescriptions to govern the future conduct of those subject to its authority; adjudication is the process by which the agency applies either law or policy or both, to the facts of a particular case." . . . Rulemaking "is essentially legislative in nature, not only because it operates in the future, but also because it is concerned largely with considerations of policy." . . . "Adjudication, conversely, is concerned with the determination of past and present rights and liabilities. Typically, [it] involve[s] a determination as to whether past conduct was unlawful so that the proceeding is characterized by an accusatory flavor and may result in disciplinary action."

*Id.* at 591, 779 P.2d at 872 (citations omitted).

HGEA contends that the pricing appeal in this case requires a contested case hearing because (1) it deals with the prior conduct of the Director in assigning the new classes to a lower salary range and does not set new standards for future conduct; (2) PECAB's decision was not a

decision of general applicability, but was a resolution of a specific dispute between HGEA and DPS; and (3) in determining the dispute, PECAB applied the facts of the case to rules laid down in chapter 77. Thus, HGEA contends that PECAB was required to provide a contested case hearing in accordance with HRS § 77–7 (1985), which requires PECAB to comply with HRS chapter 91 "in all respects." HGEA's arguments are without merit.

The applicability of HRS chapter 91 contested case proceedings in this case depends upon whether the pricing appeal provided for in HRS § 77–4 creates a "contested case" within the meaning of chapter 91. *See Abramson v. Board of Regents*, 56 Haw. 680, 548 P.2d 253 (1976). In other words, is a pricing appeal "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing?" HRS § 91–1(5) (1985).

Generally, a contested case is one in which the agency performs an adjudicative as compared to an administrative function. *See Shoreline.* " '[T]he line between [the rulemaking and adjudicating] functions is not always a clear one and in fact the two functions merge at many points.' " *Shoreline*, 70 Haw. at 591, 779 P.2d at 872 (quoting *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 770, 89 S. Ct. 1426, 1432, 22 L. Ed. 2d 709, 717 (1969) (Black, concurring)). HRS chapter 77 is one of those points where the two functions merge.

The entire thrust of chapter 77's provisions is to establish the procedures, policies, and standards for developing the compensation plan through uniform allocation or assignment of all positions in the position classification plan to appropriate salary ranges in the salary structure. The statutory scheme assures that all positions with

similar duties, responsibilities, and functions are compensated at the same level of pay. Even though a pricing appeal requires PECAB to decide whether the pricing actions, which are *faits accompli*, conform to the procedures, policies, and standards of the statute, and the decision affects an individual employee, nevertheless, the end result — the compensation plan — is a statement of general application that governs the future conduct of the personnel departments of the state and county governments.

Additionally, the fact that the compensation plan must be submitted to the legislature for biennial approval indicates that PECAB's function is legislative in nature rather than adjudicatory. In essence, the compensation plan provides the basis for a statement of legislative policy governing employee compensation for the succeeding biennium. Indeed, the compensation plan is little more than a report to the legislature for its approval.

## B.

Citing *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 108 S. Ct. 1780, 100 L. Ed. 2d 265 (1988), HGEA further argues that the employees affected by the reallocation "have a property interest in their governmental jobs and the wage scales of their governmental jobs." Therefore, in accordance with *Town v. Land Use Comm'n*, 55 Haw. 538, 524 P.2d 84 (1974), PECAB was required to accord contested case hearing procedures to the pricing appeal in this case. The argument is without merit.

It is well–settled that the claim of a right to a due process hearing requires that the interest for which the protection is being sought must be in the nature of "property" within the meaning of the due process clauses of the

federal and state constitutions. *Aguiar v. Hawai'i Hous. Auth.*, 55 Haw. 478, 522 P.2d 1255 (1974).

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."

*Sandy Beach Defense Fund v. City Council*, 70 Haw. 361, 377, 773 P.2d 250, 260 (1989) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548, 561 (1972)).

In our view, HGEA has failed to show that the affected employees in this case clearly had a legitimate claim to have their class of positions assigned to a particular salary range. At best, they had only a desire to see that their class was assigned to the highest salary range possible. We cannot agree that the affected employees' claim rises to the level of a property interest within the meaning of the due process clause.

Although the supreme court has noted that wages are property subject to the protection of the due process clause, *Kekoa v. Supreme Court*, 55 Haw. 104, 108, 516 P.2d 1239, 1242 (1973), *cert. denied*, 417 U.S. 930, 94 S. Ct. 2641, 41 L. Ed. 2d 233 (1974), the salary range assignment in this case did not, in and of itself, affect the incumbent employees' salaries. It only determined the range of salaries applicable to the newly created class of positions, considering the principles of HRS chapter 77. The employees' salaries may be affected when the positions held by them are allocated or reallocated within the *position classification plan* in accordance with HRS § 76–13(8)(A) and (B) (1985 and Supp. 1992), respectively. However, such actions are dependent upon the duties and responsibilities of each position, are separate from the

assignment of classes to salary ranges within the *compensation plan*, and are subject to appeal to the civil service commission in accordance with the procedures established in HRS § 76–47 (1985), which provides for substantially the same procedures for hearing such appeals as provided for contested cases under HRS chapter 91.

## CONCLUSION

The circuit court was correct in holding that it lacked jurisdiction to entertain HGEA's appeal in this case. *Cf.* HRS § 91–14(a) (1985).

Accordingly, the order of dismissal is affirmed.

*Charles K. Y. Khim* on the briefs for petitioner–appellant.

*Ruth I. Tsujimura* and *Kathleen Racuya–Markrich*, Deputy Attorneys General, on the brief for respondents–appellees.